E16QweiC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   DEVORAH CRUPER-WEINMANN

 4                  Plaintiff

 5          v.                              13 CV 7013 (JSR)

 6   PARIS BAGUETTE AMERICA

 7                  Defendant

 8   ------------------------------x
                                            New York, N.Y.
 9                                          January 6, 2014
                                            1:00 p.m.
10
     Before:
11
                        HON. JED S. RAKOFF
12
                                            District Judge
13
                             APPEARANCES
14

15

16   FRANK & BIANCO
          Attorneys for Plaintiffs
17   MARVIN FRANK
     BRIDGET HAMILL
18

19   TROUTMAN SANDERS LLP
          Attorney for Defendant
20   ERIC L. UNIS
     JOSHUA BERMAN
21   MARY JANE YOON

22

23

24

25
```

E16QweiC

```
 1                (In open court; case called)

 2                THE DEPUTY CLERK:  Will the parties please identify

 3    themselves for the record.

 4                MR. FRANK:  Marvin Frank and Bridget Hamill from Frank

 5    & Bianco for the plaintiff.

 6                THE COURT:  Good morning.

 7                MR. BERMAN:  Josh Berman, Troutman Sanders for

 8    defendants Paris Baguette.

 9                With me at counsel table are my colleagues Mary Jane

10    Yoon and Eric Unis.  I also want to introduce to the Court

11    Mr. Ujin Shin and Dylan Ahn, who are the general manager and

12    vice-president respectively for Paris Baguette.

13                THE COURT:  Good morning.  Please be seated.

14                We are here on the motion to dismiss.  Let me hear

15    first from moving counsel.

16                MR. BERMAN:  Thank you, sir.

17                Good morning, Judge Rakoff.

18                This is a purported FACTA class action.  The law

19    itself, FACTA makes an express distinction between two

20    categories of violation.  There are expressly denominated

21    willful violations of the law.  There is a separate connect, by

22    the way, reflected in Section 1681 of Subsection N of the

23    statute.  There are also an entirely separate category of

24    violations that are denominated by FACTA itself as negligent

25    violations.  That is reflected in Section 16810.
```

E16QweiC

1          THE COURT:  So, it seems to me there are two issues

2     here:  One is whether they plausibly pled willfulness, and the

3     other is whether they asserted any basis for a class action as

4     opposed to an individual action.  Taking the first, they allege

5     that there was partial compliance with FACTA but not total.

6     So, that indicates that your client was aware of the law, but

7     failed to comply with it in some respect, and their argument,

8     as I understand it, is that more likely than not that was a

9     knowing and willful decision.

10          MR. BERMAN:  Let me address that, your Honor.

11          I do think it has to be addressed together with the

12     other paragraphs in the complaint that purport to address

13     willfulness.  So, as I understand their argument, and to

14     sharpen the facts, of the 12 digits on the plaintiff's credit

15     card, Ms. Cruper-Weinmann's, nine were redacted in entirety and

16     only three were left visible.  Now, FACTA -- unbeknownst to my

17     clients, FACTA only requires the redaction of the first seven

18     digits.  In fact, FACTA permits five of the credit card digits

19     to be unredacted, to be out in the open.

20          The argument is that my client's overcompliance with

21     the redaction requirement as it relates to the credit card

22     number is ipso facto evidence of my client's willfulness with

23     respect to their technical noncompliance as to the expiration

24     date portion of the receipt.

25          Now, for what it's worth in our view, Judge Rakoff,

E16QweiC

1    that is just a logical fallacy.  It is not correct that my

2    clients were aware of FACTA, and it's not correct that the

3    overcompliance, as it were, with redacting the credit card

4    number shows their intentionality or willfulness with respect

5    to the expiration date; but there is a kind of corollary to

6    that, which is that that allegation, logically flawed as we

7    believe it is, is paired in the complaint or succeeds four

8    paragraphs that relate to the broader history of the enactment

9    of FACTA.

10          FACTA was widely published by merchants in 2006.  The

11   Visa credit card terms of use contain some fine print relating

12   to FACTA.  In 2003, a variety of senders made speeches relating

13   to FACTA.  Now, at all of those times, my client didn't exist.

14   Paris Baguette did not open in the United States until after

15   all of the hoopla that surrounded the enactment of the law, and

16   the implementation of the law had already occurred.

17          So this is a company, quite successful in Korea, that

18   decided to establish a chain here in the United States.  What

19   happened is they came over here.  The first store opened in

20   '07, and they used essentially the same programming partner,

21   which is a Korean company, respected Korean company that is

22   known obviously for complying with the applicable privacy laws,

23   and they were able to engineer a situation where the -- it's

24   called the point of sale system -- or the cash register itself

25   could accept credit cards rather than having a separate credit

E16QweiC

1    card terminal.  And, thereby, at the end of the day, that was a

2    great solution because they didn't have to take the receipt

3    from the credit card.

4             THE COURT:  All the stuff you are telling me, this is

5    a motion to dismiss, right?

6             MR. BERMAN:  Yeah, so --

7             THE COURT:  So you can't tell me any of that.

8             MR. BERMAN:  So, even putting separate and aside from

9    that entirely, let me read or let me identify for the Court,

10   respectfully, the way that other federal courts had treated

11   precisely the allegations they make here that compliance was

12   part of the statute is ipso facto evidence of willfulness, not

13   just a non-party --

14            THE COURT:  I'm familiar with those cases.  I get the

15   gist, and I apologize for cutting you off, but I think I need

16   to hear from your adversary, and we will come back to you on

17   that.

18            MR. BERMAN:  Thank you, Judge.

19            MR. FRANK:  Good morning, your Honor.

20            THE COURT:  So, if we have here a partial

21   compliance -- your adversary says it's overcompliance, but, in

22   any event, partial compliance/partial noncompliance, why in the

23   world does that give rise to a reasonable, plausible inference

24   of willfulness?  Why isn't it just the opposite; that there is

25   no motive, there is no reason why they would comply with part

E16QweiC

1    and not with the other part?

2              MR. FRANK:  I think that recklessness is part of

3    willfulness.  I think all the courts hold that, and when you

4    look at *Safeco*, it holds that.  What you're looking for --

5              THE COURT:  What do you mean by recklessness?

6              MR. FRANK:  Recklessness is different than actual

7    knowledge.  You don't need actual knowledge.  You need to be

8    able to just get it wrong not through negligence, but, you see

9    it a lot in securities, right?  In securities law --

10             THE COURT:  I'm very familiar with it in securities

11   law, and I don't think -- I don't see where you pled what it's

12   referred to in securities law or the real origin of the term in

13   modern judicial parlance is the model penal code.  And what it

14   refers to is a willful blindness.  Where do you plead willful

15   blindness?

16             MR. FRANK:  I believe that they were either willfully

17   blind or knowingly blind.  In paragraph 30, the language say

18   they had contracts with -- they had contracts with Visa,

19   MasterCard, American Express and the other credit card

20   companies that required them to comply with FACTA.

21             THE COURT:  But the point is -- maybe I wasn't clear

22   on the question I was putting to you.  If there had been total

23   noncompliance with FACTA, and you could show or fairly allege

24   that they were told repeatedly that you should comply with

25   FACTA and they didn't, that would support willfulness.  I don't

7

E16QweiC

1    even know you'd have to go to recklessness, but assuming

2    recklessness in the model penal code sense was part of it, it

3    would probably support that.  But that's not what we have here.

4           What we have here is partial compliance but not total

5    compliance.  That sounds like negligence.  Why in the world --

6    what motive would they have to comply with the part that they

7    did comply with but not comply with the part that you allege

8    they should have complied with?  That is just -- you know, they

9    blew it in terms of negligence, but how can you infer

10   willfulness from that?

11          MR. FRANK:  Every case that both defendant and

12   plaintiff had cited to have had this partial compliance.

13   Defendants cases are --

14          THE COURT:  Well, I'm not bound by any of those cases.

15   I'm asking the question as a question of what plausible

16   inferences can be drawn from your allegations?

17          MR. FRANK:  I think that the only inference -- I don't

18   know what the motive is.  I can't give them or attribute to

19   them a motive because I just don't know anything like that, and

20   I haven't had discovery.  On the other hand -- and I'm not sure

21   that there is a motive.  I don't know at this point in time.

22   On the other hand, certainly they knew about FACTA because they

23   did have this partial compliance.  That's where cases generally

24   go; that they know about FACTA, therefore, there should be full

25   compliance, not partial compliance, because it is utterly clear

8

E16QweiC

1    that you are not allowed to print the expiration date.

2          It just it seems to me at that point that the exact

3    knowledge that you cannot print anything more than five, the

4    last five digits of the credit card/debit card number, and

5    you're not allowed to print FACTA.  And I could go into why

6    they knew they're not allowed to print the expiration date.

7    You know, we have those, or why they would want to comply with

8    one of the two requirements -- and they are independent

9    requirements -- I can't answer that.

10         THE COURT:  I have the gist of your argument.

11         Let me ask you then a different question.  Assuming

12   arguendo you would survive a motion to dismiss, why should this

13   be a class action?

14         MR. FRANK:  The argument that the defendants made is

15   that there was one person, one receipt in one of their stores,

16   and that there is no overt allegations.  That's exactly what a

17   class action is meant to do.  That's what a class action is all

18   about; that you have a representative party who represents all

19   the absent class members who suffered the same fate as the

20   aggrieved party.

21         THE COURT:  What's your basis for believing that

22   anyone suffered the same fate?  If you have a classic class

23   action, like a securities fraud where if the proxy statement

24   sent to a million shareholders was false, then a million

25   shareholders were likely injured.  Or in a discrimination class

E16QweiC

1    action, if someone was discriminated against because of some

2    discriminatory employment policy, then there is every reason to

3    believe that everyone of the protected class was discriminated

4    against.  But here you don't have anything like that, do you?

5         MR. FRANK:  You have a computer system.  These point

6    of sales computer systems that printed out the receipt that was

7    given to the plaintiff at the time of the sales transaction is

8    a computer system that does the same thing over and over and

9    over again.  It's a question of how many stores there are.  I

10   said, I think in the complaint, at least 20.  Then I said in

11   the opposition brief 30 because I counted from the website.

12   Then there is an affidavit that came back that it's 12 or 14.

13   There's a lot of stores.  It's a big Korean chain that owns a

14   lot of Dunkin' Donuts franchises and other things that are

15   supposed to know what they're doing.  Their computer system

16   produces the same receipt over and over and over again.

17        THE COURT:  OK.  That clarifies it.

18        Thank you very much.  I want to hear briefly from your

19   adversary in rebuttal.

20        MR. BERMAN:  Thank you, Judge Rakoff.

21        As to the first issue, on the question of willfulness

22   and why an inference of willfulness plausibly arises or doesn't

23   plausibly arise here, the argument that the plaintiff is making

24   would quite literally write the possibility of a negligent

25   violation out of the statute entirely, and --

E16QweiC

1            THE COURT:  No, no, no, because this is just on a

2       motion to dismiss, and your adversary says there are cases out

3       there that say that context is a plausible inference, and by

4       the end of discovery it may have been erased, and on summary

5       judgment, there may be nothing left of negligence, but this is

6       a motion to dismiss.

7            MR. BERMAN:  So on the law that there are cases out

8       there that accept this inference as evidence of ipso facto

9       willfulness, that is absolutely incorrect; and I rely for that

10      assertion on the precedent cited in the brief.  I can recite

11      them to your Honor now.

12           THE COURT:  No, that's OK.

13           MR. BERMAN:  There is a statement that was made in the

14      *Garber* case, that goes directly to this issue.  It was on a

15      motion to dismiss, just as this case was here.  The court

16      essentially said, you know -- it's interesting, we tried to

17      make sense of the law, and there is no question that in the

18      reported FACTA decisions, there has been a clear shift and the

19      dividing line in the reported decisions is the Iqbal/Twombly

20      line of cases.  The pre-Iqbal and Twombly cases which were

21      reported in 2007, some in 2008, permitted extraordinarily

22      bare-bones complaints to go forward.

23           The post Iqbal cases, *Komorowski*, *Miller-Huggins*, and

24      the *Seo* case, maybe most poignantly, the *Garber* decision, have

25      dismissed complaints that are virtually verbatim with this

E16QweiC

```
 1    complaint, and, in fact, incorporate the precise kind of

 2    misinference that --

 3              THE COURT:  Did you want to say anything on the class

 4    certification question to the extent it's before me at this

 5    point?

 6              MR. BERMAN:  Only very briefly, sir, if I may.

 7              I agree entirely with your Honor that there is no

 8    allegation in the complaint that relates to the kind of classic

 9    class action scenario.

10              THE COURT:  They say it's a computer -- there is every

11    reason to believe that this computer program was used across

12    the board.

13              MR. BERMAN:  But there isn't every reason to believe

14    that.  In fact, there are differences with the way particular

15    stores are set up.  For instance -- and, again, this gets into

16    some factual questions, but we get the --

17              THE COURT:  I can't consider anything that is not

18    fairly contained in the complaint.

19              MR. BERMAN:  In order to reach the conclusion of a

20    proper class, the Court would have to accept plaintiff's

21    counsel's representation that the computer system is the same

22    or there's an inference the computer system is the same across

23    Paris Baguette stores.  That's just made up.

24              The reality is some stores have a terminal that can

25    both take the receipt and process the credit card.  Other
```

E16QweiC

1    stores have a credit card terminal that is provided by a

2    different vendor.  The point is in order to get there --

3          THE COURT:  I get the point.  I apologize to both

4    counsel for keeping you on a fairly short leash, but I had a

5    particularly full calendar today.  This was a very helpful

6    argument for both sides.

7          So, I will take the matter under advisement.  I will

8    get you at least a bottom-line decision no later than

9    January 20, two weeks from today.  It may be a full opinion.

10   If it is not, a full opinion will follow, but at least you will

11   know the bottom line, and then you can continue or not as to

12   depending which way the court decides.

13         MR. BERMAN:  Judge Rakoff, if I may, there is one

14   other issue that I think is properly addressed today.  Very

15   quickly.

16         THE COURT:  Go ahead.

17         MR. BERMAN:  When we last spoke, we spoke by

18   teleconference on November 14.  What we had asked for on behalf

19   of Paris Baguette was a stay of discovery pending the Court's

20   disposition on our motion to dismiss.  I believe I'm stating

21   this entirely correctly, I hope the Court agrees with my

22   recollection, but what your Honor did, is you said to

23   plaintiff's counsel, look, I don't stay discovery.  It's not my

24   practice to do that.  I'm going to give you a choice.  Either

25   you can consent to a stay of discovery, or if you don't, I'm

E16QweiC

1      going to enter the scheduling order before me, and I'm going to

2      put everybody on an expedited briefing schedule and an

3      expedited oral argument schedule.

4              And plaintiff's counsel opted for option B.  We went

5      on a very expedited schedule.  We're here for oral argument in

6      approximately six weeks.

7              The case management plan that your Honor entered on

8      November 14 set forth a final date for serving document

9      requests and interrogatories on December 17.

10             THE COURT:  Yes.

11             MR. BERMAN:  That was an order of the court.  And the

12     plaintiffs just didn't comply with it.  We were not served with

13     discovery requests on that date.  In fact, we were not served

14     with discovery requests in compliance for several days later.

15     Paris Baguette did comply.  Unfortunately, the Court said no

16     stay.  We did comply, and we think it is not unrelated to the

17     matter in which this is --

18             THE COURT:  So, here I think -- without getting into

19     whether they complied or didn't comply -- I think the following

20     makes sense, since I am going to decide this within two weeks:

21             All discovery is stayed in all respects for between

22     now and January 20.  If I dismiss the case on January 20,

23     obviously, that's the end of that.

24             If I deny the motion on January 20, then counsel

25     should immediately jointly call my chambers, and we will reset

E16QweiC

```
 1    the discovery schedule in a way that makes sense for both sides

 2    without any arguments about waiver or anything like that.  We

 3    will just reset the whole schedule.  OK?

 4              MR. FRANK:  Your Honor, if I may have one minute?  As

 5    far as the January 20 -- obviously, I disagree with what

 6    counsel said.

 7              THE COURT:  I know.  That's why I cut off that.

 8              MR. FRANK:  As far as what happens on January 20, I

 9    just hope if the case is dismissed we're given leave to

10    replead.

11              THE COURT:  What else would you plead?

12              MR. FRANK:  Well, the one thing that was a fact that I

13    did put in the opposition brief that is not in the complaint,

14    and is improperly in the opposition brief, that after the

15    complaint was filed, we received a letter from Paris Baguette's

16    insurance company stating that there was no insurance coverage

17    because the company had negotiated an insurance policy with a

18    specific FACTA exclusion.  So, therefore, it's utterly clear

19    that senior management of Paris Baguette was aware of FACTA

20    in --

21              THE COURT:  Let me just say this:  Notwithstanding

22    defense counsel's argument, I think the complaint as it

23    presently stands raises a plausible inference that Paris

24    Baguette was fully aware of FACTA.  So, that's not going to be

25    the issue.
```

E16QweiC

1          The issue what is willfulness, and whether or not it

2    has been pled there.  That's why I asked you, is there anything

3    else you had on that issue that you wanted to plead.

4          I understand this is -- every plaintiff's counsel in

5    the world has been put in this bind by Iqbal and Twombly, like

6    I asked you before about motive, and you correctly said, we

7    don't know what their motive was, if any, we would only find

8    that out in discovery.  Agreed.  But that is, unfortunately,

9    not the end of the issue because I have to -- while motive is

10   not an element, I am just giving that as an example.  I have to

11   decide this on what you presently know and can fairly plead.

12   So, you may have pled enough.  What I am asking is there

13   anything else you would have pled, and what you are telling me

14   is you would have pled more about their knowledge of FACTA.

15   I'm saying you don't have to do that because I think you've

16   pled enough on that already.  That issue can survive dismissal.

17   The issue is willfulness.  Is there anything else you would

18   have pled on willfulness?

19          MR. FRANK:  The reason I threw in the insurance policy

20   is the cases that allowed the FACTA decision to go forward, the

21   FACTA cases to go forward, all looked towards information that

22   went to the specific defendants and not the general -- there

23   are a lot of cases out there, don't get me wrong, *Dover*, and I

24   think *Katz* that allow general information, especially after ten

25   years, for those cases to go forward, denied on a motion to

E16QweiC

1    dismiss.

2           But there are other cases, like *Troy* and *In Re: TJX*

3    that required a specific piece of knowledge that was given to

4    that defendant about FACTA.  So, I did say in paragraph 39 of

5    the complaint that the company was made aware by the contract

6    with the credit card issuing companies, they're a requirement,

7    and now this insurance company thing, that something that went

8    directly to the company that made it plausible was that they

9    willfully refused to follow the FACTA law.  So, that is why I

10   threw it in there.

11          THE COURT:  All right.  I will factor into my ruling

12   on the 20th that -- of course, I have no idea yet where I am

13   coming out on the merits, so to speak; but if I come out

14   against you, I will then consider whether based on what you

15   just told me I would allow an amended complaint or not.

16          So, thank you for raising that.

17          MR. BERMAN:  Judge, if I may just have a word about

18   this insurance communication?  I have to, for no other reason

19   than to protect the record, I understand the Court will

20   consider it as it will consider it, but the communication in

21   question was sent in error by my client's insurance company who

22   misunderstood which counsel which represented which party, and

23   it is quite distressing --

24          THE COURT:  That may be, but that is certainly not

25   something I can consider.  If they can plead it, as they

E16QweiC

1    represented they can --

2                MR. BERMAN:  They certainly couldn't plead it when

3    they filed this complaint.

4                THE COURT:  Well, as I understand it, they can plead

5    the receipt of this letter.  You are saying the letter was sent

6    in error.  That may be.  That may not be.  It's neither here

7    nor there.

8                MR. BERMAN:  What I am saying it's sent by counsel for

9    the insurer to who they believe to be counsel to the plaintiff,

10   and it ought not be admissible because it should have been

11   clawed back.  We immediately sent a letter -- I don't remember

12   honestly if it was letter or email --

13               THE COURT:  I hear you.  Very good.  Thanks very much.

14               (Adjourned)

15

16

17

18

19

20

21

22

23

24

25