**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DEVORAH CRUPER-WEINMANN, | ) | |
| INDIVIDUALLY AND ON BEHALF | ) | |
| OF ALL OTHERS SIMILARLY | ) | |
| SITUATED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-cv-07013-JSR |
| | ) | |
| v. | ) | |
| | ) | |
| PARIS BAGUETTE AMERICA, INC. | ) | |
| d/b/a PARIS BAGUETTE, | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**THE AMENDED CLASS ACTION COMPLAINT**

---

TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................................1

**BACKGROUND** .......................................................................................................4

   I.    Procedural History Of This Case ......................................................................4

**STANDARD OF REVIEW** .......................................................................................4

**ARGUMENT** ...........................................................................................................5

   II.   Post-*Spokeo* Case Law Confirms Plaintiff's Article III Standing ...................................5

      A.  Post-*Spokeo* Decisions By Second Circuit Courts Confirm That Claims Of Intangible Harm Are Sufficient To Establish Article III Standing ...........................5

      B.  Post-*Spokeo* Decisions Confirm That FACTA Plaintiffs Have Article III Standing.....................................................................................................................6

      C.  Post-*Spokeo* Decisions Confirm That Claims Of Intangible Harm Are Sufficient To Establish Article III Standing .........................................................................8

   III.  Plaintiff's Injury Is Concrete Under *Spokeo*'s Analytical Rubric ...................................9

      A.  Plaintiff's Harm Has A Close Relationship To A Traditional Harm ........................9

      B.  *Spokeo* Demands Deference To Congress's Determination Of Injury In Fact ........10

   IV.  Defendant's Arguments All Fail ...................................................................................14

      A.  Actual Harm Is Not A Requirement For A Concrete Injury In Fact ......................14

      B.  The Expiration Date Redaction Requirement Is Not "Bare Procedure" ................16

      C.  *Spokeo* Recognizes That The Danger Of Third-Party Misconduct Gives Rise To Article III Standing.............................................................................................20

      D.  The Clarification Act Expressly Made Paris Baguette's Conduct Illegal ...............21

      E.  Paris Baguette's Post-*Spokeo* Authority Does Not Undermine Plaintiff's Standing.....................................................................................................................22

   V.   Plaintiff Has Established All Article III Standing Requirements...................................23

**CONCLUSION** .........................................................................................................24

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Ali v. Playgirl, Inc.*, 447 F. Supp. 723 (S.D.N.Y. 1978) ................................................... 9

*Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ,

    2016 U.S. Dist. LEXIS 92761 (N.D. Ga. July 13, 2016) ...................................... 2, 7, 17

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ............................... 18

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003) ................................................ 3, 13, 19

*Bennett v. Spear*, 520 U.S. 154 (1997) ......................................................... 20

*Bernal v. NRA Grp., LLC*, No. 16 C 1904,

    2016 U.S. Dist. LEXIS 116191 (N.D. Ill. Aug. 30, 2016) ...................................... 16

*Block v. Meese*, 793 F.2d 1303 (D.C. Cir. 1986) ................................................ 20

*Boelter v. Hearst Commc'ns, Inc.*, Nos. 15 Civ. 3934 (AT), 15 Civ. 9279 (AT),

    2016 U.S. Dist. LEXIS 85025 (S.D.N.Y. June 17, 2016) ...................................... 2, 6

*Booth v. Appstack, Inc.*, No. C13-1533JLR,

    2016 U.S. Dist. LEXIS 68886 (W.D. Wash. May 24, 2016) ...................................... 8

*Braitberg v. Charter Commc'ns, Inc.*, No. 14-1737,

    2016 U.S. App. LEXIS 16477 (8th Cir. Sept. 8, 2016) ........................................ 13

*Burke v. Fed. Nat'l Mortg. Ass'n*, No. 3:16cv153-HEH,

    2016 U.S. Dist. LEXIS 105103 (E.D. Va. Aug. 9, 2016) ...................................... 17

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ................................... 5

*Caudill v. Wells Fargo Home Mortg., Inc.*, No. 5:16-cv-066-DCR,

    2016 U.S. Dist. LEXIS 89136 (E.D. Ky. July 11, 2016) ........................................ 8

*Church v. Accretive Health, Inc.*, No. 15-15708,

    2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016) ................................. 2, 15, 23

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) .............................................. 21

*Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005) ............................... 4

*DeKalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016) .................... 21

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ....................................... 19

*Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 (PKC) (AKT),

    2016 U.S. Dist. LEXIS 101201 (E.D.N.Y. Aug. 2, 2016) .............................. 3, 15, 22, 23

*Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012).......................... passim

*Duncan v. Walker*, 533 U.S. 167 (2001)..................................................................... 21

*Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117 (S.D.N.Y. 2011) ......................................... passim

*Flaum v. Doctor's Assocs., Inc. d/b/a Subway*,

No. 16-cv-61198-ALTONAGA/O'Sullivan, ECF No. 27 (S.D. Fla. Aug. 29, 2016) ............ 2, 7

*Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 Civ. 7174 (KPF),

2015 U.S. Dist. LEXIS 96903 (S.D.N.Y. July 23, 2015) ......................................................... 4

*Gratz v. Claughton*, 187 F.2d 46 (2d Cir. 1951)........................................................ 18

*Guarisma v. Microsoft Corp.*, No. 15-cv-24326-ALTONAGA/O'Sullivan,

2016 U.S. Dist. LEXIS 97729 (S.D. Fla. July 26, 2016)................................................. 2, 7, 17

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................................... 14

*Hepokoski v. Brickwall of Chi., LLC*, No. 09 C 611,

2009 U.S. Dist. LEXIS 122389 (N.D. Ill. Sept. 22, 2009) ..................................................... 22

*Husic v. Holder*, 776 F.3d 59 (2d Cir. 2015) ............................................................. 21

*In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC),

2016 U.S. Dist. LEXIS 75663 (S.D.N.Y. June 9, 2016)...................................................... 2, 10

*In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441,

2016 U.S. App. LEXIS 11700 (3d Cir. June 27, 2016) ......................................................... 3, 8

*Irvine v. I.C. Sys., Inc.*, No. 14-cv-01329-PAB-KMT,

2016 U.S. Dist. LEXIS 99880 (D. Colo. July 29, 2016) ......................................................... 16

*Jaffe v. Bank of Am., N.A.*, No. 13 Civ. 4866 (VB),

2016 U.S. Dist. LEXIS 92899 (S.D.N.Y. July 15, 2016) .................................................. 2, 6, 23

*Juarez v. Citibank, N.A.*, No. 16-cv-01984-WHO,

2016 U.S. Dist. LEXIS 118483 (N.D. Cal. Sept. 1, 2016) ....................................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................... 11, 19

*Mey v. Got Warranty, Inc.*, No. 5:15-CV-101,

2016 U.S. Dist. LEXIS 84972 (N.D. W.Va. June 30, 2016) ..................................................... 8

*Mount v. PulsePoint, Inc.*, No. 13 Civ. 6592 (NRB),

2016 U.S. Dist. LEXIS 112315 (S.D.N.Y. Aug. 17, 2016)................................................... 2, 6

*Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,

710 F.3d 71 (2d Cir. 2013)................................................................................ 5, 14, 19

iii

*Nyberg v. Portfolio Recovery Assocs., LLC*, No. 3:15-cv-01175-PK,

    2016 U.S. Dist. LEXIS 71897 (D. Or. June 2, 2016) ............................................... 16

*Pavesich v. New Eng. Life Ins. Co.*, 50 S.E. 68 (Ga. 1905) ......................................... 9

*Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-13490J-34PDB,

    2016 U.S. Dist. LEXIS 108386 (M.D. Fla. Aug. 16, 2016) ................................... 16

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) ........................................ 14

*Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418 (1972) ......................... 19

*Ross v. Bank of Am., N.A.*, 524 F.3d 217 (2d Cir. 2008) ............................................... 4

*Sec. & Exch. Comm'n v. Gib. Global Sec., Inc.*, No. 13 Civ. 2575 (GBD) (JCF),

    2015 U.S. Dist. LEXIS 43773 (S.D.N.Y. Apr. 1, 2015) ...................................... 10

*Spokeo, Inc. v. Robins,* 578 U.S. ___, 136 S. Ct. 1540 (2016) ............................... passim

*Ung v. Universal Acceptance Corp.*, No. 15-cv-127 (RHK/FLN),

    2016 U.S. Dist. LEXIS 102363 (D. Minn. Aug. 3, 2016) ...................................... 8

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,

    412 U.S. 669 (1973) ............................................................................................... 5

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) ........ 9

*Wood v. J Choo USA, Inc.*, No. 15-cv-81487-BLOOM/Valle,

    2016 U.S. Dist. LEXIS 106029 (S.D. Fla. Aug. 11, 2016) ............................... passim

*Yeager v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-117-MHT-PWG,

    2016 U.S. Dist. LEXIS 105007 (M.D. Ala. Aug. 8, 2016) ................................... 16

*Yershov v. Gannet Satellite Info. Network, Inc.*, No. 14-13112-FDS,

    2016 U.S. Dist. LEXIS 119125 (D. Mass. Sept. 2, 2016) ..................................... 17

*Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500 (S.D.N.Y. 2014) .................................... 9

## Constitutional Provisions

U.S. Const. art III, § 2 ........................................................................................... passim

## Statutes

12 U.S.C. § 2605 ................................................................................................... 22, 23

12 U.S.C. § 2607 ................................................................................................... 22, 23

15 U.S.C. § 1681c(g) ............................................................................................. passim

15 U.S.C. § 1681n(a) ............................................................................................. 1, 24

15 U.S.C. § 1692 et seq................................................................................ 2, 8, 15

15 U.S.C. § 78p(b) ..................................................................................... 3, 18, 19

18 U.S.C. § 2710 ........................................................................................... 8, 17

47 U.S.C. § 227 .......................................................................................... 8, 9, 16

Credit and Debit Card Receipt Clarification Act of 2007,

    Pub. L. 110-241, 122 Stat. 1565 ......................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................... 1, 5

Fed. R. Civ. P. 12(b)(6).................................................................................... 4

**Other Authorities**

Brief in Support of Statute by United States of America as Intervenor,

    *Papazian v. Burberry Ltd.*, No. 2:07-cv-01479-GPS-RZ (C.D. Cal. July 24, 2007).......... 12, 13

Bureau of Justice Statistics, U.S. Dep't of Justice,

    "Victims of Identity Theft, 2012" (Dec. 2013)........................................ 11

Don Coker, "Credit Card Expiration Dates and FACTA," HGExperts.com................................ 14

Post-Argument Letter Brief by Amicus Curiae Public Justice, P.C.,

    *Cruper-Weinmann v. Paris Baguette Am., Inc.*, No. 14-3709 (2d Cir. June 17, 2016) .............. 9

Prepared Statement, Linda Foley, Executive Director, Identity Theft Resource Center,

    *FACTA Hearing*, 108th Cong., S. Hrg. 108-579 (2003)........................................... 12

Prepared Statement, Michael D. Cunningham, Senior Vice President,

    Credit & Fraud Operations, Chase Cardmember Services,

    *FACTA Hearing*, 108th Cong., S. Hrg. 108-579 (2003)........................................... 12

President George W. Bush, Remarks at FACTA Signing Ceremony (Dec. 4, 2003) .................. 11

Press Release, Fed. Trade Comm'n,

    "FTC Releases Annual Summary of Consumer Complaints" (Mar. 1, 2016).......................... 11

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)........ 9

*Tournier v. Nat'l Provincial & Union Bank of Eng.*, (1924) 1 K.B. 461 ..................................... 10

Plaintiff, Devorah Cruper-Weinmann, by her attorneys, respectfully submits this memorandum of law in opposition to Defendant's ("Paris Baguette") motion to dismiss the Amended Class Action Complaint (ECF No. 45), pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

Paris Baguette caused Plaintiff concrete harm when it violated her substantive, statutorily protected rights by printing her personal financial information in a manner forbidden by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA").[1]  In passing FACTA, Congress determined that the harm emanating from printing Plaintiff's credit card expiration date—increasing her risk of identity theft—was devastating to consumers, and yet was difficult to trace and identify and therefore required a new remedy at law.  Through FACTA, Congress granted to Plaintiff a substantive legal right to not have her credit card expiration date printed in order to preclude the specific harm of identity theft.  Plaintiff therefore suffered an injury in fact, because Paris Baguette's conduct violated Congress's flat rule, which was thoughtfully designed to reduce Plaintiff's exposure to risk of harm.[2]  Paris Baguette relies entirely on inapposite examples of "bare procedur[e]," such as a requirement to provide consumers with a toll-free number, the violation of which cannot possibly cause harm.[3]

Courts that have examined the Article III standing of FACTA plaintiffs pursuant to *Spokeo* have held that merchants cause consumers a concrete injury in fact by printing their personal financial information, including the prohibition on printing the card expiration date, irrespective of proof of actual identity theft or a specific harm to their credit.  *Flaum v. Doctor's*

---

[1]  Pub. L. 108-159, 117 Stat. 1952 (codified as 15 U.S.C. § 1681c(g)).

[2]  This violation is remediable at law in the form of statutory damages for Paris Baguette's willful violations.  *See* 15 U.S.C. § 1681n(a)(1)(A).

[3]  *Spokeo, Inc. v. Robins,* 578 U.S. ___, ___, 136 S. Ct. 1540, 1545, 1549–50 (2016).

*Assocs., Inc. d/b/a Subway*, No. 16-cv-61198-ALTONAGA/O'Sullivan, ECF No. 27, slip op. at 3–8 (S.D. Fla. Aug. 29, 2016) (printing expiration date); *Wood v. J Choo USA, Inc.*, No. 15-cv-81487-BLOOM/Valle, 2016 U.S. Dist. LEXIS 106029, at \*15–18 (S.D. Fla. Aug. 11, 2016) (printing expiration date); *Guarisma v. Microsoft Corp.*, No. 15-cv-24326-ALTONAGA/O'Sullivan, 2016 U.S. Dist. LEXIS 97729, at \*11–12 (S.D. Fla. July 26, 2016) (printing more than last five digits of card number); *Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ, 2016 U.S. Dist. LEXIS 92761, at \*11–21 (N.D. Ga. July 13, 2016) (printing more than last five digits of card number).  Paris Baguette asks this Court to deviate from this accepted interpretation of *Spokeo*, while offering no good reason for doing so.

Further, courts interpreting *Spokeo* in this District—as well the Third and Eleventh Circuits—have confirmed the Article III sufficiency of claims alleging violations of substantive rights that were granted in order to protect parties from an increased probability of a devastating event.  *See Mount v. PulsePoint, Inc.*, No. 13 Civ. 6592 (NRB), 2016 U.S. Dist. LEXIS 112315, at \*12–14 (S.D.N.Y. Aug. 17, 2016) (Buchwald, J.) (standing found for plaintiffs suing over unauthorized tracking of their online browsing); *Jaffe v. Bank of Am., N.A.*, No. 13 Civ. 4866 (VB), 2016 U.S. Dist. LEXIS 92899, at \*9–12 (S.D.N.Y. July 15, 2016) (Briccetti, J.) (failure to timely record mortgage satisfactions pursuant to recordation statute); *Boelter v. Hearst Commc'ns, Inc.*, Nos. 15 Civ. 3934 (AT), 15 Civ. 9279 (AT), 2016 U.S. Dist. LEXIS 85025, at \*8–11 n.4 (S.D.N.Y. June 17, 2016) (Torres, J.) (selling personal information to data mining companies); *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2016 U.S. Dist. LEXIS 75663, at \*18–22 (S.D.N.Y. June 9, 2016) (Crotty, J.) (untruthful information in stock registration statements); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414, at \*6–11 (11th Cir. July 6, 2016) (failure to provide disclosures mandated by Fair Debt Collection Practices Act); *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441,

2016 U.S. App. LEXIS 11700, at *19–22 (3d Cir. June 27, 2016) ("*Nickelodeon II*") (surreptitiously tracking web browsing history).

Relying only on the misinterpretation of a recent decision from the Eastern District of New York,[4] Paris Baguette asks this Court to disavow a mountain of reasoning from other courts, and to improperly second-guess Congress's well-thought-out statutory regime, which plainly makes Defendant's conduct illegal because it causes harm.

Congress did not subvert any longstanding principles of Article III standing jurisprudence when it passed FACTA. It has always been the law in this Circuit that a plaintiff enjoys constitutional standing when she alleges that the defendant's conduct places her at an increased risk of a destructive event. *See, e.g.*, *Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003). This principle applies per force when Congress has identified a particular risk as being unacceptable as a matter of law, and crafted statutory a flat rule to protect the public by granting them substantive rights, so as not to be exposed to that risk. *See Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 177–78, 180 (2d Cir. 2012) (corporation suffered a concrete harm when an investor with 10% beneficial ownership engaged in short swing trading, in violation of "flat rule" prohibition codified at § 16(b) of the Securities Exchange Act of 1934).

Paris Baguette's standing challenge finds no support under either pre- or post-*Spokeo* Article III standing precedent. Paris Baguette's half-hearted attempt to argue that Congress never intended to proscribe publication of expiration dates is clearly contradicted by the law itself, which made this practice illegal <u>twice</u>, as well as the statutory history, which explains why Congress banned the harmful practice of printing credit card expiration dates.

---

[4]  In *Dolan v. Select Portfolio Servicing*, Judge Chen ruled that mortgage borrowers <u>do have</u> Article III standing to seek statutory damages under Section 2607 of the Real Estate Settlement Procedures Act, a flat-rule prohibition against servicer kickbacks and fee-splitting that expressly does not require proof of actual damages. *See Dolan*, No. 03-CV-3285 (PKC) (AKT), 2016 U.S. Dist. LEXIS 101201, at *12–15, *17 (E.D.N.Y. Aug. 2, 2016); *see also* Parts IV.A, IV.E, *infra*.

<u>BACKGROUND</u>

I.     **Procedural History Of This Case**

Plaintiff alleges that Paris Baguette violated FACTA by including the full expiration date of her credit card on the receipt generated during a credit card transaction that took place in September 2013 at a Paris Baguette location in Manhattan.  Class Action Compl. ¶¶ 14–16, 35–40, ECF No. 1; Am. Class Action Compl. ¶¶ 7, 16–17, 89–92, ECF No. 40.

The Supreme Court issued its decision in *Spokeo* while the Second Circuit was considering the appeal of this Court's June 30, 2014 order in this matter (ECF No. 24).  The Second Circuit, through its Summary Order of July 28, 2016, vacated and remanded, instructing Plaintiff to replead her claims in light of *Spokeo*, and this Court, to address any *Spokeo*-related issues in the first instance (ECF No. 38).[5]  Plaintiff then filed the Amended Class Action Complaint—the currently operative complaint—pursuant to the Second Circuit's instructions (ECF No. 40).  Paris Baguette then filed the instant motion (ECF No. 45).

<u>STANDARD OF REVIEW</u>

"Injury in fact is a low threshold . . . ."  *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008).  It "is not Mount Everest."  *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (Alito, J.).  All that need be pleaded in order to establish Article III standing is an "'identifiable trifle'" of injury.  *Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710

---

[5]  Although Paris Baguette acknowledges that this Court intended for the instant briefing only to address only Article III standing issues, Paris Baguette spends much of its brief addressing whether Plaintiff has stated a claim under Rule 12(b)(6).  (Def.'s Br. at 16–18, ECF No. 47).  As Paris Baguette's arguments ignore this Court's instructions, Plaintiff asks that this portion of Paris Baguette's brief be struck.  Plaintiff does observe, however, that the legal landscape has changed since this Court's Order of June 30, 2014.  *See, e.g.*, *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 Civ. 7174 (KPF), 2015 U.S. Dist. LEXIS 96903, at *11–13 (S.D.N.Y. July 23, 2015) (Failla, J.) (plaintiff plausibly alleged a willful violation of FACTA where merchant recklessly continued to include expiration dates on receipts years after passage of Clarification Act).

F.3d 71, 85 (2d Cir. 2013) ("*NRDC*") (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)).

In weighing a Rule 12(b)(1) motion arguing that the facts as pleaded by the plaintiff are insufficient to establish Article III standing, a court must consider the plaintiff's allegations, and any documents referenced therein or attached thereto, in the light most favorable to the plaintiff. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).

<u>A R G U M E N T</u>

## II.     Post-*Spokeo* Case Law Confirms Plaintiff's Article III Standing

The decisions analyzing Article III standing pursuant to *Spokeo* make clear that a consumer, such as Plaintiff here, suffers a concrete injury in fact when a merchant violates her substantive, statutorily protected rights by printing her personal financial information in violation of FACTA.  Plaintiff has so pleaded herein.  Class Action Compl. ¶¶ 14–16, 35–40; Am. Class Action Compl. ¶¶ 7, 16–17, 89–92.

Paris Baguette has not identified <u>any</u> post-*Spokeo* decision denying Article III standing to a plaintiff alleging the violation of "a procedural right granted by statute" as a means of protecting individuals from "the risk of real harm."  *Spokeo*, 136 S. Ct. at 1549; *see also Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 125–26 (S.D.N.Y. 2011) (Castel, J.) (sustaining claims for willful violations of FACTA where the "only harm alleged" was "an exacerbated risk of identity theft" and "an increased risk of identity theft and credit and/or debit card fraud" (internal quotation marks and citation omitted)).  Paris Baguette's paltry discussion of post-*Spokeo* precedent is limited to authority that, if anything, support Plaintiff's entitlement to standing here.

### A.   Post-*Spokeo* Decisions By Second Circuit Courts Confirm That Claims Of Intangible Harm Are Sufficient To Establish Article III Standing

Post-*Spokeo* decisions by courts in this Circuit have been consistent on the dispositive point here: when a defendant's conduct has violated a right granted to individuals to protect them

from a specific, but difficult-to-prove, harm—such as the risk of identity theft—the plaintiff has suffered a concrete injury in fact for Article III purposes.  *See Engel*, 279 F.R.D. at 125–26.

For example, Judge Briccetti recently confirmed the Article III standing of homeowners who alleged that a bank had failed to timely record mortgage satisfactions in violation of the controlling recordation statute, a violation that placed the homeowners at risk of the negative consequences potentially resulting from a clouded title.  *Jaffe*, 2016 U.S. Dist. LEXIS 92899, at *9–12.  Similarly, Judge Torres has held that *Spokeo* "does not upset" the Article III standing of magazine subscribers who alleged that the publisher sold their personal information to data mining companies in violation of a privacy statute, resulting in, among other harms, the "risk of being victimized by scammers."  *Boelter*, 2016 U.S. Dist. LEXIS 85025, at *8–11 n.4 (internal quotation marks and record citation omitted).  Finally, Judge Buchwald has held that *Spokeo* supports the Article III standing of Internet users who sued a digital media company under computer-fraud and consumer-protection statutes for using "cookies" to track their online browsing activity without their permission, thereby subjecting them to the intangible, yet still concrete, harm of invasion of privacy.  *Mount*, 2016 U.S. Dist. LEXIS 112315, at *12–14.

B.  Post-*Spokeo* Decisions Confirm That FACTA Plaintiffs Have Article III Standing

Courts that have ruled on this issue have held that, pursuant to *Spokeo*'s guidance, when a merchant violates either of FACTA's truncation requirements, that merchant causes a concrete harm to the consumer whose private financial information was printed.  *See Wood*, 2016 U.S. Dist. LEXIS 106029, at *15 ("Congress clearly intended to hold card merchants to the <u>two separate</u> truncation requirements imposed by FACTA, namely, the truncation of the card number <u>and</u> the card expiration date." (emphases added)); *see also* 15 U.S.C. § 1681c(g) (No merchant "shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.").  These courts have done so, even

where the plaintiff did not plead actual harm through identity theft or harm to his or her credit. *Flaum*, No. 16-cv-61198-ALTONAGA/O'Sullivan, ECF No. 27, slip op. at 4, 8 (S.D. Fla. Aug. 29, 2016); *Wood*, 2016 U.S. Dist. LEXIS 106029, at *8, *18; *Guarisma*, 2016 U.S. Dist. LEXIS 97729, at *4, *11–13; *Altman*, 2016 U.S. Dist. LEXIS 92761, at *3, *21.

Far from "bare procedur[e]," these courts have held that FACTA grants a substantive legal right.  "FACTA's legislative history[,]" which reflects thorough investigation of the most effective means of protecting consumers from <u>any</u> risk of identity theft, "supports the [conclusion that] Congress desired to create a <u>substantive</u> legal right for consumers to utilize in protecting against identity theft."  *Guarisma*, 2016 U.S. Dist. LEXIS 97729, at *12 (emphasis added) (confirming Article III standing of FACTA plaintiff alleging violation of card-number truncation requirement) (citing *Spokeo*, 136 S. Ct. at 1549); *accord Flaum*, No. 16-cv-61198-ALTONAGA/O'Sullivan, ECF No. 27, slip op. at 7 (S.D. Fla. Aug. 29, 2016) (Article III standing for FACTA plaintiff alleging failure to truncate expiration date).  "[B]oth <u>before and</u> <u>after</u> *Spokeo*, 'other courts have found th[at] FACTA endows consumers with a legal right to protect their credit identities.'"  *Wood*, 2016 U.S. Dist. LEXIS 106029, at *10 (emphasis added) (quoting *Guarisma*, 2016 U.S. Dist. LEXIS 97729, at *10 (listing cases)).

As such, "a FACTA violation [is] concrete as soon as a company prints the offending receipt," regardless of whether the consumer-plaintiff has "actually" had her identity stolen. *Guarisma*, 2016 U.S. Dist. LEXIS 97729, at *11; *see Spokeo*, 136 S. Ct. at 1549 (A plaintiff alleging "the violation of a procedural right granted by statute" in order to protect against "the risk of real harm" is not required to "allege any <u>additional</u> harm beyond the one Congress has identified." (emphasis original)); *accord Flaum*, No. 16-cv-61198-ALTONAGA/O'Sullivan, ECF No. 27, slip op. at 6 (S.D. Fla. Aug. 29, 2016).

C. Post-*Spokeo* Decisions Confirm That
   Claims Of Intangible Harm Are Sufficient To Establish Article III Standing

Numerous courts around the nation have confirmed that intangible, risk-based harms are concrete harms for Article III standing purposes. The Third Circuit recently upheld the Article III standing of plaintiffs who alleged that trackers of young viewers' Internet browsing habits violated the Video Privacy Protection Act, 18 U.S.C. § 2710, which codifies procedures for the protection of private information of consumers of electronic media.  *Nickelodeon II*, 2016 U.S. App. LEXIS 11700, at *4–8.  "The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information."  *Id.* at *22.

Numerous post-*Spokeo* decisions in cases involving claims under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, confirm that plaintiffs have Article III standing when they allege that they were subjected to the very same intangible harm that a statutory scheme was designed to protect them against.  *See Juarez v. Citibank, N.A.*, No. 16-cv-01984-WHO, 2016 U.S. Dist. LEXIS 118483, at *6–8 (N.D. Cal. Sept. 1, 2016); *Ung v. Universal Acceptance Corp.*, No. 15-cv-127 (RHK/FLN), 2016 U.S. Dist. LEXIS 102363, at *4–5 (D. Minn. Aug. 3, 2016); *Caudill v. Wells Fargo Home Mortg., Inc.*, No. 5:16-cv-066-DCR, 2016 U.S. Dist. LEXIS 89136, at *3–4 (E.D. Ky. July 11, 2016); *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *16–17 (N.D. W.Va. June 30, 2016); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 U.S. Dist. LEXIS 68886, at *17 (W.D. Wash. May 24, 2016);[6] *see also* Part IV.A, *infra* (discussing post-*Spokeo* decisions affirming Article III standing of plaintiffs alleging violations of the Fair Debt Collection Practices Act).

_____

[6]  The Article III standing inquiries in these post-*Spokeo* TCPA decisions comport with those of pre-*Spokeo* TCPA decisions.  *See Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y.

**III.    Plaintiff's Injury Is Concrete Under *Spokeo*'s Analytical Rubric**

Under the analytical rubric provided by *Spokeo*, Plaintiff's injury in fact is sufficiently concrete, as supported by the fact that Plaintiff's harm has a close relationship to the traditional harms related to unauthorized disclosure of private financial information, and that Congress passed FACTA in order to specifically elevate Plaintiff's risk-based harm of identity theft[7] to one cognizable at law in order to combat a real problem of widespread identity theft and fraud. *See Engel*, 279 F.R.D. at 125–26.

A.    Plaintiff's Harm Has A Close Relationship To A Traditional Harm

As *Spokeo* emphasizes, Plaintiff's Article III standing is reinforced by the fact that the harm emanating from merchants' mistreatment of individuals' private financial information "has a close relationship to[] harm that has traditionally been regarded as providing a basis for a lawsuit in English [and] American courts."  *Spokeo*, 136 S. Ct. at 1549 (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)).

Courts' and Congress's ability to define the boundaries of individuals' privacy rights stems from ancient legal concepts.[8]  *Pavesich v. New Eng. Life Ins. Co.*, 50 S.E. 68, 70 (Ga. 1905) (right of privacy is "derived from natural law"), *cited with approval in Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 731 (S.D.N.Y. 1978) (Gagliardi, J.); *see also* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 195 (1890).  Moreover, and especially relevant here, English common law has traditionally recognized a specific right to privacy of

---

2014) (Rakoff, J.) (plaintiff subjected to repeated robocalls has Article III standing to sue under TCPA "even if he has not suffered actual harm").

[7]    *See* Class Action Compl. ¶¶ 1–2, 6–11, 14, 23; Am. Class Action Compl. ¶¶ 1–2, 7, 18–40, 58–59, 83–88.

[8]    For a more thorough discussion of this topic, see Post-Argument Letter Brief by Amicus Curiae Public Justice, P.C., *Cruper-Weinmann v. Paris Baguette Am., Inc.*, No. 14-3709 (2d Cir. June 17, 2016) (attached hereto as Exhibit A).

information pertaining to individuals' financial accounts.  Nearly a century ago, the English Court of Appeal identified the common-law right to strict confidence of bank account information.  *See Tournier v. Nat'l Provincial & Union Bank of Eng.*, (1924) 1 K.B. 461, *cited with approval in Sec. & Exch. Comm'n v. Gib. Global Sec., Inc.*, No. 13 Civ. 2575 (GBD) (JCF), 2015 U.S. Dist. LEXIS 43773, at *7 (S.D.N.Y. Apr. 1, 2015) (Francis, Mag. J.).

This concept dovetails with the broader notion, by now well-enshrined in American law—and, in particular, the precedent of this Circuit—that Congress may create substantive rights in order to protect one party to a financial relationship from harmful conduct by the other party that may be difficult to prove or trace.  *See Donoghue*, 696 F.3d at 177–78, 180 (corporation suffered concrete harm when investor with beneficial ownership of more than 10% of the stock violated implied-fiduciary relationship created by the Securities Exchange Act of 1934); *In re Barclays Bank PLC Sec. Litig.*, 2016 U.S. Dist. LEXIS 75663, at *18–22 (statutory-damages provision of Section 11 of the Securities Act of 1933 protects shareholders against falsities in stock registration statement).

Paris Baguette accepted a duty not to mishandle consumers' personal financial data when it chose to accept credit cards as a means of payment.  FACTA codified that duty as a matter of federal statutory law.  When Paris Baguette misprinted Plaintiff's private financial information, it not only violated FACTA, but also breached a duty that has strong roots in the Anglo-American legal tradition.[9]

B. *Spokeo* Demands Deference To Congress's Determination Of Injury In Fact

Congress spoke clearly when it twice rendered Paris Baguette's conduct illegal.  As *Spokeo* makes clear, courts must defer to Congressional determinations of what harms constitute

---

[9]   Paris Baguette nonsensically argues that FACTA is about "identity theft"—and thus is unconnected to privacy rights.  (Def.'s Br. at 16).  Identity thieves succeed by exploiting leaks in private information, such as the one FACTA is intended to prevent.

an injury in fact.  136 S. Ct. at 1549 ("[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is[] instructive and important. . . .  Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992))).  This is because "'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'"  *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580).

(1) *Congress Passed FACTA Because Consumers Needed Protection*

Congress passed FACTA after substantial fact-finding into the pervasiveness of identity theft.  Identity theft has topped the Federal Trade Commission's list of consumer complaints for 15 years.[10]  In 2012, roughly 7% of all U.S. residents age 16 or older were victims of at least one incident of identity theft.[11]  Congress enacted FACTA in 2003 in response to the rampant growth of credit/debit card fraud and identity theft, facilitated in large part by the increasing number of sophisticated criminal syndicates relying on rapidly expanding technology.  FACTA renders it more difficult for identity thieves to obtain consumers' credit card information by reducing the amount of information identity thieves can retrieve from found or stolen credit card receipts.  As President Bush declared when signing FACTA into law:

> This bill also confronts the problem of identity theft.  A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs.  With this legislation, the federal government is protecting our citizens by taking the offensive against identity theft.

President George W. Bush, Remarks at FACTA Signing Ceremony (Dec. 4, 2003).

---

[10]   *See* Press Release, Fed. Trade Comm'n, "FTC Releases Annual Summary of Consumer Complaints" (Mar. 1, 2016), *available at* https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints.

[11]   Bureau of Justice Statistics, U.S. Dep't of Justice, "Victims of Identity Theft, 2012" (Dec. 2013), *available at* http://www.bjs.gov/content/pub/pdf/vit12.pdf.

(2) *Printing Expiration Dates On Card Receipts Is Illegal Because It Causes Consumers Concrete Harm*

When Congress passed FACTA, it was common knowledge that criminals specializing in credit card fraud coveted both the number <u>and</u> expiration date for individual credit cards. Experts, including members of the credit card industry, (1) told Congress that both of these types of data are particularly dangerous in the hands of sophisticated criminals, and (2) recommended that expiration dates not be printed on credit card receipts. *See The History, Purpose, and Function of the Fair Credit Reporting Act and Provisions Subject to the Expiring Preemption Provision Specifically; The Growing Problem of Identity Theft; Affiliate Sharing Practices; Accuracy of Credit Report Information; Consumer Awareness and Understanding the Credit Granting Process and Addressing Measures to Enhance the Act: Hearing Before the S. Comm. on Banking, Hous. & Urban Affairs*, 108th Cong., S. Hrg. 108-579 (2003) ("*FACTA Hearing*") (Prepared Statement, Michael D. Cunningham, Senior Vice President, Credit & Fraud Operations, Chase Cardmember Services); *see also FACTA Hearing* (Prepared Statement, Linda Foley, Executive Director, Identity Theft Resource Center) (recommending that merchants be required to truncate entire expiration date on credit card receipts).[12]

The U.S. Department of Justice ("DOJ") has confirmed the causal link between the expiration date disclosed by Paris Baguette here and credit card identity theft. In *Papazian v. Burberry Ltd.*, No. 2:07-cv-01479-GPS-RZ (C.D. Cal.), for example, the DOJ filed a brief that explained the purpose of FACTA and why Paris Baguette's publication caused actual harm:

> The goal of the provision that became § 1681c(g) was "to limit the opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 (2003). FACTA followed enactment of laws in at least 20 states with provisions similar to § 1681c(g) that prohibited printing the full card number as well as the expiration date on receipts. . . .
>     . . . .

---

[12]   A transcript of *FACTA Hearing* may be viewed at: https://www.gpo.gov/fdsys/pkg/CHRG-108shrg95254/html/CHRG-108shrg95254.htm.

> Defendant's argument that a thief would not be able to make fraudulent charges using *only* a truncated card number and the full expiration date misses the point. Thieves might piece together (or 'pick-off,' in the words of Congress) different bits of information from different sources. The expiration date of a customer's credit/debit card, until recently printed on Defendant's receipts, is one of several pieces of information that can make it easier for criminals to rack up fraudulent charges. These dates are worth protecting even when not accompanied by other important financial information. . . . Congress' actions comport with common experience, testimony provided in support of the legislation, and the instructions credit card companies give to merchants. . . .

Brief in Support of Statute by United States of America as Intervenor, *Papazian v. Burberry Ltd.*, No. 2:07-cv-01479-GPS-RZ (C.D. Cal. July 24, 2007) (underlined emphases added), *filed as* Exhibit A to Ex Parte Application to Intervene, ECF No. 24.[13]

Congress knew that only persons in Plaintiff's position (those for whom a merchant printed credit card receipts bearing private financial information) would suffer harm, and that they would specifically suffer the harm Congress had contemplated (the enhanced risk that sophisticated criminals would exploit their financial resources). Thus, "there is a tight connection between the type of injury which [Plaintiff] alleges and the fundamental goals of the statute[] which [she] sues under—reinforcing [her] claim of cognizable injury." *Baur*, 352 F.3d at 635; *see* Class Action Compl. ¶¶ 1–2, 6–11, 14, 23, 35–40; Am. Class Action Compl. ¶¶ 1–2, 7, 16–40, 58–59, 83–88, 89–92.[14]

---

[13]  Paris Baguette argues that the DOJ's brief in *Papazian* lacks relevance here because it did not specifically address Article III standing and does not "constitute congressional intent concerning FACTA." (Def.'s Br. at 16). This argument fails because the DOJ's *Papazian* brief summarizes facts about identity theft that were made known to Congress at the time it passed FACTA, and are still true today.

[14]  In contrast, a harm alleged by a plaintiff that was not contemplated by Congress may be "speculative or hypothetical," because it was not a central concern to Congress in passing the act. *Braitberg v. Charter Commc'ns, Inc.*, No. 14-1737, 2016 U.S. App. LEXIS 16477, at *11–12 (8th Cir. Sept. 8, 2016) (no Article III standing for plaintiff alleging ex-cable provider failed to his destroy customer information, in violation of Cable Communications Policy Act); *see* Br. of Pl.-Appellant at 6, *Braitberg*, No. 14-1737 (8th Cir. May 20, 2014) (acknowledging that Congress was not concerned about any specific, known privacy-invasion threat when it passed Cable Communications Policy Act).

(3) *The Harms Caused By Paris Baguette's Misconduct Are Still Very Real*

As Judge Posner has observed, none of the harms caused by printing card expiration dates on receipts have abated in the years since FACTA was first enacted and then reinforced through the Clarification Act. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626–27 (7th Cir. 2014) (Posner. J.) (citing Don Coker, "Credit Card Expiration Dates and FACTA," HGExperts.com, http://www.hgexperts.com/article.asp?id=6665 ("Unfortunately, and despite the fact that FACTA was widely discussed before and after its passage, many merchants simply have ignored [both truncation] aspects of FACTA, apparently based upon their belief that expiration dates are unimportant to a criminal.  They are wrong.  Credit card expiration dates are very important and useful to criminals.") (listing more than a dozen ways that criminals can use card expiration dates to the detriment of consumers)).

## IV.    Defendant's Arguments All Fail

Paris Baguette's arguments as to why Plaintiff did not suffer a concrete injury fail for additional reasons beyond those set forth above.

### A.    Actual Harm Is Not A Requirement For A Concrete Injury in Fact

Paris Baguette makes much of the fact that Plaintiff has not pleaded that Paris Baguette's FACTA violation caused her to fall victim to identity theft.  Def.'s Br. at 7–13, ECF No. 47. However, *Spokeo* plainly states that an individual whose substantive procedural rights have been violated "need not allege any <u>additional</u> harm beyond the one Congress has identified."  136 S. Ct. at 1549 (emphasis original); *see also id.* at 1553 (Thomas, J., concurring) (a plaintiff alleging the violation of a substantive procedural right "need not allege actual harm beyond the invasion of" that right) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982)).  The violation, in and of itself, of such a right causes the "trifle"[15] of injury in fact that is sufficiently

---

[15]  *NRDC*, 710 F.3d at 85 (internal quotation marks and citation omitted).

concrete for Article III purposes.  *See* 136 S. Ct. at 1549.  Moreover, actual harm has never been

an element of a FACTA violation.  *See Engel*, 279 F.R.D. at 125–26.

Paris Baguette's argument is contradicted by the very authority it relies on.  In *Dolan v.

Select Portfolio Servicing*, the court observed that actual harm is not required for a concrete

injury.  *Dolan*, 2016 U.S. Dist. LEXIS 101201, at *13, *24 (plaintiffs need not allege that they

"have been <u>over</u>charged as a result of [a] kickback or fee-splitting arrangement [between

mortgage servicers]"—*i.e.*, need not allege any actual harm—in order to establish Article III

standing pursuant to *Spokeo*, because "Congress intended to create [the] right in Section 2607"

of the Real Estate Settlement Procedures Act for mortgage borrowers "to bring suit regardless of

the existence or non-existence of actual harm . . . ." (emphasis original)); *see also Donoghue*,

696 F.3d at 175 ("[I]t has long been recognized that a legally protected interest may exist solely

by virtue of statutes creating legal rights, the invasion of which creates standing even though no

injury would exist without the statute." (internal quotation marks and citation omitted)).

Similarly, the Eleventh Circuit, in its recent decision in *Church*, confirmed the Article III

standing of a debtor who had been sent a collection letter that failed to set forth certain

disclosures specifically required by the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 et seq., and therefore suffered no actual damages.  *Church*, 2016 U.S. App.

LEXIS 12414, at *4, *9–11.  The Eleventh Circuit observed that, while the harm emanating from

"the invasion" of an individual's "right to receive the disclosures" required by the FDCPA "may

not have resulted in tangible economic or physical harm that courts often expect, the Supreme

Court has made clear an injury need not be tangible to be concrete."  *Id.* at *10–11 (citing

*Spokeo*, 136 S. Ct. at 1549).

Also in the FDCPA context, post-*Spokeo* decisions from district courts across the country

have confirmed the Article III standing of plaintiffs seeking only statutory damages based upon

their increased risk of harm, *i.e.*, misconduct that goes to the core of the FDCPA's preventative intent.  *See, e.g.*, *Bernal v. NRA Grp., LLC*, No. 16 C 1904, 2016 U.S. Dist. LEXIS 116191, at *13–14 (N.D. Ill. Aug. 30, 2016) (collection letter demanded percentage-based collection fee in violation of FDCPA); *Yeager v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-117-MHT-PWG, 2016 U.S. Dist. LEXIS 105007, at *13–14 (M.D. Ala. Aug. 8, 2016) (failure to provide FDCPA-required information disclosures in debt collection letter); *Irvine v. I.C. Sys., Inc.*, No. 14-cv-01329-PAB-KMT, 2016 U.S. Dist. LEXIS 99880, at *7–9 (D. Colo. July 29, 2016) (debtor was incorrectly informed that debt would remain on her credit report until it was paid);[16] *see also* Part II.C, *supra* (discussing post-*Spokeo* decisions affirming Article III standing of plaintiffs alleging violations of the TCPA).

B.  The Expiration Date Redaction Requirement Is Not "Bare Procedure"

In *Spokeo*, Justice Alito observed that Article III standing will only be found lacking where the plaintiff alleges statutory violations that are totally "divorced" from any "concrete interest that is affected by the deprivation" of a "procedural right" granted by Congress.  136 S. Ct. at 1549 (internal quotation marks and citation omitted).  By way of example, he noted that there is virtually no possibility that dissemination of an incorrect zip code on a consumer report could give rise to the type of harm that the FCRA was designed to protect consumers against, and thus it is a violation of "bare procedur[e]."  *Id.* at 1550; *see also id.* at 1553 (Thomas, J., concurring).

However, where a business violates a statutory provision that goes to the very core of the statute's purpose, it has committed a substantive violation.  *Wood*, 2016 U.S. Dist. LEXIS

---

[16]  *See also Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-13490J-34PDB, 2016 U.S. Dist. LEXIS 108386, at *39–42 (M.D. Fla. Aug. 16, 2016) (deceptive debt collection letter to homeowner whose mortgage loan had been discharged in bankruptcy); *Nyberg v. Portfolio Recovery Assocs., LLC*, No. 3:15-cv-01175-PK, 2016 U.S. Dist. LEXIS 71897, at *2, *18–19 (D. Or. June 2, 2016) (debtor alleged ultimately unsuccessful collection lawsuit contained misrepresentations as to applicable statute of limitations).

106029, at *15 (emphasis original) (Article III standing under *Spokeo* for consumer alleging violation of FACTA's expiration-date truncation requirement). "In some sense, the right at issue can appear procedural. Yet, given the purposes, framework, and structure of the [statute], the right [granted] by the statute appears to be more substantive than procedural." *Burke v. Fed. Nat'l Mortg. Ass'n*, No. 3:16cv153-HEH, 2016 U.S. Dist. LEXIS 105103, at *10 (E.D. Va. Aug. 9, 2016) (interpreting *Spokeo* and confirming FCRA plaintiff's Article III standing to sue for violations of that statute's privacy protections).[17]

Congress, in enacting FACTA, "has provided Plaintiff[] with a <u>substantive</u> right to receive a truncated credit card receipt," and the violation of this "<u>substantive</u> right to a truncated receipt" amounts to a concrete injury in fact under *Spokeo*. *Altman*, 2016 U.S. Dist. LEXIS 92761, at *14 (emphases added); *see also Guarisma*, 2016 U.S. Dist. LEXIS 97729, at *10 (Congress "intended to create a <u>substantive</u> right" when it passed FACTA (emphasis added)).

When passing the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"), Pub. L. 110-241, §§ 2(a)(2), 3(a), 122 Stat. 1565, 1565–66, Congress re-investigated the harm stemming from printing expiration dates, as Paris Baguette did here, and confirmed that violating merchants would be subject to stiff penalties. "Any argument that Congress intended to approach post-Clarification Act violations resulting from the improper truncation of a card number in a different manner than violations resulting from the improper truncation of a card expiration date defies the plain language of the statute, which does not distinguish between the two truncation requirements." *Wood*, 2016 U.S. Dist. LEXIS 106029, at *15–16.

---

[17]   *Accord Yershov v. Gannet Satellite Info. Network, Inc.*, No. 14-13112-FDS, 2016 U.S. Dist. LEXIS 119125, at *23 n.5 (D. Mass. Sept. 2, 2016) (Video Protection Privacy Act creates substantive, not "bare procedural," statutory right protecting consumers against unauthorized disclosure of private information (internal quotation marks and citation omitted)).

(1) *Second Circuit Courts Have Long Recognized The Article III Standing Of Plaintiffs Alleging Violations Of Substantive Procedural Rights*

Courts in the Second Circuit have for many years appreciated, and applied, *Spokeo*'s crucial holdings—namely, that Congress enjoys the authority to grant substantive procedural rights as a means of deterring conduct that causes risk-based harm that is difficult to trace or quantify, and that the violation of such rights causes an injury in fact for Article III purposes. *Spokeo*, 136 S. Ct. at 1549.

Particularly instructive is the Second Circuit's 2012 decision in *Donoghue*, which concerned § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b).  Pursuant to § 16(b), "when a stock purchaser chooses to acquire a 10% beneficial ownership stake in an issuer, he becomes a corporate insider and thereby accepts the limitation that attaches to his fiduciary status: not to engage in any short-swing trading in the issuer's stock.  At that point, injury depends not on whether the § 16(b) fiduciary traded on inside information but whether <u>he traded at all</u>." *Donoghue*, 696 F.3d at 177 (emphasis added) (internal brackets, quotation marks, and citation omitted).  Without such strict liability, there is a perpetual risk that corporate insiders will unjustly enrich themselves at the expense of the corporation as a whole.  *Compare Donoghue*, 696 F.3d at 176 ("Judge Learned Hand observed that '[i]f only those persons were liable, who could be proved to have a bargaining advantage, the execution of the statute would be so encumbered as to defeat its whole purpose.'" (quoting *Gratz v. Claughton*, 187 F.2d 46, 50 (2d Cir. 1951) (Hand, J.))), *with Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) ("The actual harm that a willful violation of FACTA will inflict on a consumer will often be small or difficult to prove. . . .  That actual loss is small and hard to quantify is why statutes such as the [FCRA] provide for modest damages without proof of injury.") (internal quotation marks and citation omitted).

18

Just as with § 16(b), Congress may assign fiduciary-like duties to a handler of consumers' credit card information insofar as to not publish that information. *See Spokeo*, 136 S. Ct. at 1549 ("[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a [traditional] harm . . . ."). The purpose and effects of § 16(b) and FACTA are analogous. Both were solutions to pervasive problems that harmed both individuals and U.S. markets. Both statutes were required because the underlying harms—insider trading and identity theft—were difficult to prove at law, requiring a flat rule to prevent them. Congress "'elevat[ed] to the status of legally cognizable injuries'" the risk-based harms caused by FACTA's prohibited conduct.'" *Id.* (quoting *Lujan*, 504 U.S. at 578); *see also Engel*, 279 F.R.D. at 125–25 (sustaining claim for violation of FACTA, because it "increased [the] risk of identity theft" (internal quotation marks and citation omitted)).[18] Indeed, the Supreme Court's description of § 16(b) sounds nearly identical to FACTA:

> [C]ourts have recognized that the only method Congress deemed effective to curb the evils of insider trading was <u>a flat rule</u> taking the profits out of a <u>class of transactions</u> in which the <u>possibility of abuse was believed to be intolerably great</u>. . . .
>
> In order to achieve its goals, Congress chose a relatively <u>arbitrary rule capable of easy administration</u>. The objective standard of Section 16 (b) imposes strict liability upon substantially all transactions occurring within the statutory time period, regardless of the intent of the insider or the existence of actual speculation. <u>This approach maximized the ability of the rule to eradicate speculative abuses by reducing difficulties in proof. Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect</u>."

---

[18]   Moreover, under the law of this Circuit, Plaintiff would have Article III standing to sue Paris Baguette for the harm of increased risk of identity theft alone. *See Spokeo*, 136 S. Ct. at 1549 ("[T]he risk of real harm," in and of itself, can "satisfy the requirement of concreteness."); *Baur*, 352 F.3d at 633 (["T]he courts of appeals have generally recognized that threatened harm in the form of an increased risk of future injury may serve as injury[]in[]fact for Article III standing purposes." (citations omitted)); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (taxpayers facing increased risk of audit by the Internal Revenue Service suffered injury in fact, because "[a]n injury[]in[]fact may simply be the <u>fear or anxiety of future harm</u>." (emphasis added)). Importantly, in evaluating the degree of risk sufficient to support standing in this Circuit, a court engages in an analysis that "is qualitative, not quantitative, in nature." *Baur*, 352 F.3d at 637 (internal quotation marks and citation omitted); *accord NRDC*, 710 F.3d at 81.

*Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422 (1972) (emphases added) (internal quotation marks and citation omitted), *cited by Donoghue*, 696 F.3d at 176–77.

C. *Spokeo* Recognizes That The Danger Of Third-Party
   <u>Misconduct Gives Rise To Article III Standing</u>

Paris Baguette suggests that Plaintiff could not have suffered a concrete, risk-based harm because the manifestation of this harm into an easily quantifiable harm requires the independent actions of a third party.  (Def.'s Br. at 12–13).  *Spokeo* flatly rejects this premise, noting that numerous common-law torts allow for redress of harms that are dependent upon third-party conduct for manifestation.  *See Spokeo*, 136 S. Ct. at 1549 (citing as examples libel and slander *per se*, the harm from both of which depends on the choice of third-parties to believe the false information about the plaintiff); *see also Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.) (If it were true "[']that there is no standing to sue regarding action of a defendant which harms the plaintiff only through the reaction of third persons," then "it is difficult to see how libel actions or suits for inducing breach of contract could be brought in federal court . . . .'").

In fact, the very harm alleged by the plaintiff in *Spokeo*—one not flatly rejected by the *Spokeo* court—was that the falsities in Spokeo's reports could influence the decisions of third-party employers.  *Spokeo*, 136 S. Ct. at 1556 (Ginsburg, J., dissenting) (". . . Robins' complaint already conveys concretely [that] Spokeo's misinformation causes actual harm to his employment prospects." (internal brackets, quotation marks, and record citation omitted)); *see also Bennett v. Spear*, 520 U.S. 154, 169 (1997) (plaintiff had Article III standing where alleging "injury produced by determinative or coercive effect upon the action of [a third party]").  Similarly here, the publication of a consumer's credit card data causes actual harm to her financial integrity by increasing the probability that third parties will act to her detriment.

20

D.  <u>The Clarification Act Expressly Made Paris Baguette's Conduct Illegal</u>

Paris Baguette argues that the Clarification Act somehow denies Article III standing to plaintiffs alleging FACTA violations such as Paris Baguette has committed here.  (Def.'s. Br. at 12–13, 15–16).  "[T]he fallacy of [Paris Baguette's] argument is that it does not address the role of Congressional findings."  *Wood*, 2016 U.S. Dist. LEXIS 106029, at *17 (internal quotation marks and citation omitted).

The *Wood* Court, in confirming the plaintiff's Article III standing to press her FACTA claims, expressly rejected the very argument now raised by Paris Baguette.  *Id.* at *12–16.  In *Wood*, as here, the merchant-defendant violated FACTA by printing the consumer-plaintiff's credit card expiration date on her receipt at the point of sale.  *Id.* at *2.  The merchant-defendant attempted to argue that FACTA somehow permits a merchant to escape liability for failing to truncate the expiration date, so long as it has complied with the card-number truncation requirement.  *Id.* at *12.  As the *Wood* Court explained, any such argument invites a court to undermine basic rules of statutory interpretation, not to mention *Spokeo*'s mandate of deference to Congressional intent.  *Id.* at *8–10, 14–15; *see Spokeo*, 136 S. Ct. at 1549 ("[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is[] instructive and important. . . .").

The Second Circuit has rejected Paris Baguette's invitation to give a statute's preamble the force of law.  "'[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'"  *DeKalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 404 (2d Cir. 2016) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)); *accord Wood*, 2016 U.S. Dist. LEXIS 106029, at *14.  Further, courts must avoid any "proposed interpretation" of a statute that would "render[] certain portions of [the statute] meaningless surplusage."  *Husic v. Holder*, 776 F.3d 59, 64 (2d Cir. 2015) (citing *Duncan v.*

*Walker*, 533 U.S. 167, 174 (2001)); *accord Wood*, 2016 U.S. Dist. LEXIS 106029, at *14.

Congress has <u>twice</u> investigated, and <u>twice</u> determined, that truncation of card expiration dates is necessary to protect consumers against the scourge of identity theft.  *See* Clarification Act §§ 2(a)(2), 3(a).  The Clarification Act <u>clearly</u> states that the grace period for noncompliance with <u>both</u> of FACTA's truncation requirements <u>ended</u> on June 3, 2008.  Clarification Act § 3(a) (codified as 15 U.S.C. § 1681n(d)); *accord Wood*, 2016 U.S. Dist. LEXIS 106029, at *12–13. "'If Congress wanted the Clarification Act['s grace period] to apply prospectively and without limitation—thereby eliminating the failure to truncate expiration dates as constituting willful [non]compliance—Congress would have eliminated the June 3, 2008 end date from the Clarification Act or amended [§] 1681c(g)(1) eliminating expiration dates as a basis of liability altogether.'"  *Wood*, 2016 U.S. Dist. LEXIS 106029, at *14 (quoting *Hepokoski v. Brickwall of Chi., LLC*, No. 09 C 611, 2009 U.S. Dist. LEXIS 122389, at *8 (N.D. Ill. Sept. 22, 2009)).

### E.   Paris Baguette's Post-*Spokeo* Authority Does Not Undermine Plaintiff's Standing

The first of Paris Baguette's only two post-*Spokeo* citations is to the recent decision in *Dolan* by Judge Chen of the Eastern District of New York, concerning violations of the Real Estate Settlement Procedures Act ("RESPA").  Def.'s Br. at 13–14 (citing 2016 U.S. Dist. LEXIS 101201)).  A careful reading of *Dolan* suggests that Judge Chen's analysis actually <u>supports</u> Plaintiff's Article III standing here.

While Paris Baguette builds its house on Judge Chen's finding as to § 2605 of RESPA, governing mortgage-servicing-transfer notification requirements, § 2605 is inapposite, because it <u>specifically</u> requires proof of actual damages to make a claim.  *See* 2016 U.S. Dist. LEXIS 101201, at *15–18.  More instructive is Judge Chen's analysis of § 2607 of RESPA, which imposes a flat-rule prohibition on kickbacks between companies involved in mortgage lending. *Id.* at *12–15.

Judge Chen, stressing *Spokeo*'s instruction to defer to Congressional intent, concluded that mortgage borrowers not alleging actual damages do have standing to sue under § 2607.  *See id.* at \*5–6, \*12–18, \*24 ("[T]he plain language of Section 2607 reflects Congress's intent to protect an interest that is, by nature, intangible—the public's interest in exposing corruption in the real estate financing industry[.]").  Just as it did with § 2607, Congress crafted FACTA as a flat-rule prohibition in order to eradicate a specific and known, yet difficult-to-prove, risk-based harm.[19]

Paris Baguette also relies on Judge Briccetti's decision in *Jaffe*, which confirmed the Article III standing of homeowners who sued their mortgage lender for failing to record mortgage satisfactions in violation of New York State recordation statutes.  (Def.'s Br. at 14–15 (citing 2016 U.S. Dist. LEXIS 92899, at \*10–11)).  In *Jaffe*, Judge Briccetti recognized that the purpose of those statutes is to shield homeowners from the risk-based harm stemming from a clouded title.  *See* 2016 U.S. Dist. LEXIS 92899, at \*11–12.  This reasoning directly supports Plaintiff's standing here.  When Paris Baguette violated FACTA by misprinting Plaintiff's card receipt, it cast a cloud over her financial integrity by exposing her to the risk of identity theft against which FACTA protects consumers.  *See* Class Action Compl. ¶¶ 1–2, 6–11, 14, 23; Am. Class Action Compl. ¶¶ 1, 7, 18–40, 58, 83–88.

## V.      Plaintiff Has Established All Article III Standing Requirements

Paris Baguette's motion argues only that Plaintiff has not alleged an injury in fact for failure to allege a concrete harm.  (Def.'s Br. at 6–16).  Paris Baguette does not dispute that Plaintiff has established the other elements of Article III standing, namely, that: (1) Paris

---

[19]  Paris Baguette incorrectly suggests that Judge Chen's decision in *Dolan* rejected the Eleventh Circuit's in *Church*.  (Def.'s Br. at 13–14 (citing *Dolan*, 2016 U.S. Dist LEXIS 101201, at \*22–23 n.7 (distinguishing *Church*, 2016 U.S. App. LEXIS 12414, at \*11))).  In fact, Judge Chen merely explained that the *Dolan* plaintiff could not use *Church* to save his claims for statutory damages under § 2605 when Congress had clearly expressed its intent to limit § 2605 recovery to plaintiffs with actual damages.  *See Dolan*, 2016 U.S. Dist. LEXIS 101201, at \*20 n.7.

Baguette violated Plaintiff's own, particularized, legally protected interest, by printing her card expiration date on her receipt at the point of sale, *see* Am. Class Action Compl. ¶¶ 7, 16; and (2) this Court can redress Paris Baguette's violation of FACTA by awarding statutory and/or punitive damages as provided by the statute, *see* 15 U.S.C. § 1681n(a)(1)(A), -(2).

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court reject Paris Baguette's motion.  In the event that this Court agrees with any part of Paris Baguette's motion, Plaintiff requests leave to amend so as to cure any deficiencies in the Amended Class Action Complaint.

Dated: New York, New York
   September 13, 2016

**FRANK LLP**

By:   */s/ Marvin L. Frank*
Marvin L. Frank (MF1436)
Gregory A. Frank (GF0207)
275 Madison Avenue, Suite 705
New York, New York 10016
(212) 682-1853 Telephone
(212) 682-1892 Facsimile
mfrank@frankllp.com
gfrank@frankllp.com

**NABLI & ASSOCIATES, P.C.**
60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile
Khaled (Jim) El Nabli
Jim_ElNabli@NabliLaw.com
Joseph H. Lilly JoeLilly@att.net
Alan J. Harris AlanHarrisEsq@aol.com
Peter Y. Lee
Peter.Lee@LeeAdvocates.com

*Counsel for Plaintiff and the Class*